# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MELISSA T.,
      *Plaintiff,*

    v.

COMMISSIONER OF SOCIAL SECURITY,
      *Defendant.*

No. 3:23-cv-532 (JAM)

### ORDER DENYING PLAINTIFF'S MOTION TO REVERSE
### AND GRANTING MOTION TO AFFIRM
### THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff claims she is disabled and unable to work. She brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security, who denied her claim for supplemental security income.[1] Plaintiff has moved to reverse the decision, and the Commissioner has moved to affirm.[2] For the reasons discussed below, I will deny Plaintiff's motion to reverse and grant the Commissioner's motion to affirm.

## BACKGROUND

The following facts are taken from transcripts provided by the Commissioner.[3] In February 2014, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act.[4] Her alleged disability began on January 1, 2008.[5] The Social Security

---

[1] Docs. #1, #19.

[2] Docs. #19, #20.

[3] *See* Doc. #14. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. X).

[4] Doc. #14-1 at 41 (Tr. 32), 1711 (Tr. 1702). Although the application for supplemental security income is dated March 4, 2014, *id.* at 233 (Tr. 224), the record is replete with references to an application date of February 24, 2014, *id.* at 191 (Tr. 182), 201 (Tr. 192), 1694 (Tr. 1685), 1904 (Tr. 1895). Moreover, the parties refer to the February 2014 application date in their papers. *See* Doc. #19-1 at 2; Doc. #20-1 at 2. Accordingly, I've adopted the February 24, 2014 application date for the purposes of this ruling.

[5] Doc. #14-1 at 26 (Tr. 17).

Administration ("SSA") initially denied Plaintiff's claims in May 2014, and again upon reconsideration in December 2014.[6] She then filed a written request for a hearing.[7]

Plaintiff appeared with counsel and testified before an ALJ in a May 2016 hearing.[8] In July 2016, the ALJ entered a decision concluding Plaintiff was not disabled within the meaning of the Social Security Act.[9] The SSA Appeals Council denied Plaintiff's request for review in November 2017.[10]

Plaintiff then filed a federal court action in January 2018.[11] The parties filed a consent motion for remand in March 2020, and judgment was entered in April 2020.[12] The SSA Appeals Council issued an order remanding the case for a new hearing on three grounds.[13] First, it remanded for further evaluation of Dr. Bassam Awwa's opinions, including an explanation of the weight accorded to his opinions.[14] Second, it remanded for further consideration of Plaintiff's residual functional capacity ("RFC").[15] And third, it remanded for the obtainment of supplemental evidence from a vocational expert, if warranted by the expanded record.[16]

Plaintiff appeared with counsel and testified before an ALJ in a March 2022 remand hearing.[17] A vocational expert also testified.[18] In May 2022, the ALJ entered a decision concluding Plaintiff was not disabled within the meaning of the Social Security Act.[19] The SSA

[6] *Id.* at 149–53 (Tr. 140–44), 160–63 (Tr. 151–54).
[7] *Id.* at 164–66 (Tr. 155–57).
[8] *Id.* at 220 (Tr. 211), 1835–94 (Tr. 1826–85).
[9] *Id.* at 23–41 (Tr. 14–32).
[10] *Id.* at 10–15 (Tr. 1–6).
[11] *Id.* at 1771–83 (Tr. 1762–74); *see Tucker v. Comm'r of Soc. Sec.*, No. 18-cv-149 (D. Conn. 2018).
[12] Doc. #14-1 at 1770 (Tr. 1761); *see* Docs. #28, #29, #30, *Tucker*, No. 18-cv-149.
[13] Doc. #14-1 at 1764–69 (Tr. 1755–60).
[14] *Id.* at 1767 (Tr. 1758).
[15] *Ibid.*
[16] *Ibid.*
[17] *Id.* at 1722–63 (Tr. 1713–54).
[18] *Id.* at 1756–61 (Tr. 1747–52).
[19] *Id.* at 1688–721 (Tr. 1679–712).

Appeals Council denied Plaintiff's request for review in March 2023, finding no reason to assume jurisdiction.[20] Plaintiff then filed this federal court action in April 2023.[21]

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[20] *Id.* at 1676–82 (Tr. 1667–73).
[21] Doc. #1.

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 24, 2014, the application date.[22] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia, tension headaches, migraines, obesity, depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder ("PTSD").[23] The ALJ also acknowledged that Plaintiff's medical records reflected the following non-severe impairments: pituitary mass, pharyngitis, plantar fascia, iron deficiency anemia, sinusitis, obstructive sleep apnea, and mild and first-degree burn.[24] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[25]

The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that she may never climb ladders, ropes, or scaffolds, and should have no direct exposure to unprotected heights.[26] The ALJ further determined that Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and can perform

---

[22] Doc. #14-1 at 1694 (Tr. 1685).
[23] *Ibid.*
[24] *Id.* at 1694–96 (Tr. 1685–87).
[25] *Id.* at 1696–99 (Tr. 1687–90).
[26] *Id.* at 1699–709 (Tr. 1690–700).

frequent reaching overhead and forward bilaterally.[27] The ALJ further determined that Plaintiff may have exposure to normal office light with the overhead lamps at 60-100 watts, and can perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with the ability to adapt to routine workplace changes in a non-public work setting and only occasional interaction with coworkers and supervisors.[28]

At Step Four, the ALJ determined that Plaintiff had no past relevant work.[29] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (20 as of the application date), education (high school), work background, and RFC could perform the requirements of a marker, housekeeping cleaner, and linen grader—positions which collectively represented approximately 329,000 jobs in the national economy.[30] The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since February 24, 2014.[31]

DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g).[32] Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have

---

[27] *Id.* at 1699 (Tr. 1690).
[28] *Ibid.*
[29] *Id.* at 1709 (Tr. 1700).
[30] *Id.* at 1709–11 (Tr. 1700–02).
[31] *Id.* at 1711 (Tr. 1702).
[32] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### *Dr. Awwa*

On remand, the SSA Appeals Council instructed the ALJ to "[g]ive consideration to the treating source opinions from Dr. Awwa pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence."[33] But Plaintiff contends that "[t]he ALJ's decision does not contain legally sufficient consideration of Dr. Awwa's opinions" under the appropriate standard.[34]

The treating physician rule requires that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927 (regulations for evaluating opinion evidence for claims filed before March 27, 2017). When the treating physician's opinion is not given controlling weight, the ALJ "must explicitly consider" a number of factors to determine the proper weight to assign, including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*)). The ALJ then "must 'give good reasons in [her] notice of determination or decision for the weight [given the] treating source's [medical] opinion.'" *Id.* at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*)). Unless "a searching review of the

---

[33] Doc. #14-1 at 1767 (Tr. 1758).
[34] Doc. #19-1 at 24.

record" provides assurance that "the substance of the treating physician rule was not traversed," an ALJ's failure to apply these factors leaves the Court unable to conclude the error was harmless and requires remand. *Ibid.* (quoting *Halloran*, 362 F.3d at 32).

Plaintiff claims that the ALJ's analysis prioritized supportability and consistency and thus inappropriately applied the regulation governing medical opinions for claims filed on or after March 27, 2017.[35] *See* 20 C.F.R § 416.920c (noting that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency"). But Plaintiff ignores that the applicable regulation for claims filed before March 27, 2017 explicitly identifies supportability and consistency as two of the factors to be considered when evaluating medical opinions. *See* 20 C.F.R. § 416.927(c)(3)–(4). "In evaluating opinion evidence, the [ALJ] grant[ed] weight according to opinions that are supported by sufficient documentation of evidence, clear articulation for the basis of the opinions, and consistent findings with other objective medical evidence of record."[36] Courts have previously found no fault with ALJs applying this exact standard to medical opinions for claims filed before March 27, 2017. *See Poole v. Saul*, 462 F. Supp. 3d 137, 150 (D. Conn. 2020); *Gonzalez v. Berryhill*, 2020 WL 614201, at *6 (D. Conn. 2020).

While the ALJ erred in citing a regulation governing medical opinions for claims filed on or after March 27, 2017, that error was harmless.[37] The ALJ cited the correct regulation elsewhere in her ruling.[38] And, as my above analysis makes clear, the ALJ applied the correct

---

[35] *Id.* at 25.
[36] Doc. #14-1 at 1705 (Tr. 1696).
[37] *Id.* at 1709 (Tr. 1700) (citing "20 CFR 416.920b(c)").
[38] *Id.* at 1699 (Tr. 1690) (citing "20 CFR 416.927").

standard in analyzing medical opinions for claims filed before March 27, 2017. Accordingly, I find that the ALJ applied the correct standard in analyzing Dr. Awwa's opinions.

Plaintiff further claims that the ALJ erred in assigning Dr. Awwa's statements from 2009, 2010, and 2011 "no weight" as evidence predating Plaintiff's application.[39] Plaintiff contends that "this evidence falls within the relevant period at issue" and thus should have been considered by the ALJ.[40] But an "ALJ is not compelled to consider or assign weight to treatment that predates plaintiff's application for disability benefits." *Michael C. v. Comm'r of Soc. Sec.*, 2022 WL 21852888, at *10 (N.D.N.Y. 2022); *see McManus v. Comm'r of Soc. Sec.*, 298 F. App'x 60, 61 (2d Cir. 2008) (finding no error in the ALJ's decision to exclude evidence that "pre-dated the time period the ALJ was required to consider"). Accordingly, it was not error for the ALJ to assign no weight to these statements.[41]

Plaintiff further contends that the ALJ incorrectly assigned little weight to Dr. Awwa's April 2014 report. The ALJ evaluated two of Dr. Awwa's 2014 reports: one from April and another from August.[42] In the April 2014 report, Dr. Awwa listed October 27, 2009 as Plaintiff's "[d]ate first seen,"[43] but changed that date to April 3, 2012 in the August 2014 report.[44] Based on these dates, the ALJ accorded the April 2014 report "little weight" because "Dr. Awwa did not begin treating the claimant until 2012."[45] Plaintiff contends this assignment of weight was "clearly erroneous and a telling example of the internal inconsistencies within the decision"

---

[39] *Id.* at 1708 (Tr. 1699).
[40] Doc. #19-1 at 28.
[41] Plaintiff also contends that "[t]here is no mention or discussion of whether [Dr. Awwa's] opinions were entitled to controlling weight." *Ibid.* But this argument, made in one sentence, is not adequately developed for the Court to address in detail. Moreover, the ALJ clearly did not accord Dr. Awwa's opinions controlling weight because, as Plaintiff points out, she assigned them little to no weight. *See* Doc. #14-1 at 1707–09 (Tr. 1698–700).
[42] Doc. #14-1 at 1707–08 (Tr. 1698–99).
[43] *Id.* at 1044 (Tr. 1035).
[44] *Id.* at 1096 (Tr. 1087).
[45] *Id.* at 1707 (Tr. 1698).

because the ALJ evaluated Dr. Awwa's reports from 2009 onward and thus should have known that the treatment relationship beginning in 2009.[46]

Even accepting Plaintiff's argument that it was error for the ALJ to conclude that Dr. Awwa began treating Plaintiff in April 2012, her decision to accord the April 2014 report "little weight" is supported by the ruling and record. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."); *Consiglio v. Berryhill*, 2018 WL 1046315, at *7 (D. Conn. 2018) (same). The length of treatment was only part of the analysis and, "overall, the [ALJ] assign[ed] the opinion minimal weight, as the findings are unsupported by the treatment notes."[47]

In the April 2014 report, Dr. Awwa noted Plaintiff's depression and limited functionality.[48] But two days before drafting the April 2014 report, Dr. Awwa recorded that Plaintiff reported "I am doing OK" and noted that Plaintiff "thinks she is more depressed but she attributes that to being medically ill."[49] At that visit, Dr. Awwa assessed Plaintiff as "attend[ing] to tasks normally" and "demonstrat[ing] good fund of knowledge."[50] Dr. Awwa's findings in the April 2014 report are also rebutted by contemporaneous treatment notes by other providers who recorded in March 2014 that "[o]ver the past 2 weeks, [Plaintiff] has not felt down, depressed or hopeless" and "has not felt a lack of interest or pleasure in doing things," as well as in May 2014 that Plaintiff was "[a]lert and oriented in all spheres – cooperative and motivated."[51] The ALJ

---

[46] Doc. #19-1 at 27.
[47] Doc. #14-1 at 1707 (Tr. 1698).
[48] *Id.* at 1044–47 (Tr. 1035–38).
[49] *Id.* at 1392 (Tr. 1383); *see id.* at 1390 (Tr. 1381) (noting at a February 25, 2014 visit with Dr. Awwa that Plaintiff's prescriptions were "helping as a muscle relaxant and with anxiety").
[50] *Id.* at 1392 (Tr. 1383).
[51] *Id.* at 995 (Tr. 986), 1323 (Tr. 1314). Plaintiff's depression continued to improve, as similar observations were recorded in June, August, September, and October 2014. *See, e.g., id.* at 1260 (Tr. 1251), 1270 (Tr. 1261), 1276 (Tr. 1267), 1281 (Tr. 1272), 1285 (Tr. 1276), 1296 (Tr. 1287).

further found that "Dr Awwa's opinion is also inconsistent with the claimant's independent daily activities, which include her enrollment and attendance at a community college."[52] In short, it was not error for the ALJ to accord Dr. Awwa's April 2014 report little weight.

Plaintiff's contention that the ALJ devoted "no discussion to Dr. Awwa's specialty as a psychiatrist" is belied by the ruling.[53] Indeed, the ALJ referred to Dr. Awwa as "the claimant's psychiatrist," and recognized the examining and treatment relationship throughout the ruling.[54] *See* 20 C.F.R. § 416.927(c)(1)–(2), (5). Plaintiff's claim that the ALJ did not discuss Dr. Awwa's specialty is therefore without merit.

### State agency medical consultants

Plaintiff further claims that the ALJ erred in according the 2014 state agency medical consultant reports "great weight" because the "opinions did not consider any subsequent medical records from the following 8 years that are in evidence" and thus relied on "stale" records.[55] "A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Palmer v. Saul*, 2020 WL 4731350, at *4 n.3 (D. Conn. 2020). Indeed, "a gap of time between when an opinion is rendered and the disability hearing and the decision does not automatically invalidate that opinion," but rather only "a 'meaningful change' in [the plaintiff's] condition during the gap will do so." *Renee L. v. Comm'r of Soc. Sec.*, 2022 WL 685285, at *6 (N.D.N.Y. 2022). Plaintiff has not indicated that any such change occurred here; rather, her argument is premised entirely on the passage of time.[56] Accordingly, I do not

---

[52] *Id.* at 1707 (Tr. 1698).
[53] Doc. #19-1 at 28.
[54] Doc. #14-1 at 1707 (Tr. 1698).
[55] Doc. #19-1 at 26.
[56] *See* Doc. #14-1 at 1705 (Tr. 1696) (noting that "claimant submitted additional evidence at the hearing level, and . . . that evidence does not contradict the findings of the State agency medical consultants").

find it was error for the ALJ to accord "great weight" to the opinions of the state agency medical consultants.

Plaintiff also alleges that it was reversible error for the ALJ to accord the opinions of state agency medical consultants Drs. Carl Bancoff and Jeanne Kuslis, a cardiologist and internist, greater weight than Plaintiff's treating psychiatrist, Dr. Awwa.[57] Regardless of their specialty, "[t]he report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012). Here, the ALJ found that Drs. Bancoff and Kuslis "supported their determinations with persuasive rationale based on specific evidence of record" whereas Dr. Awwa's opinions were accorded little to no weight because his "findings [we]re unsupported by the treatment notes."[58] *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the governing regulations "permit the opinions of nonexamining sources to override a treating source's opinions, provided they are supported by evidence in the record"). In sum, the ALJ did not commit reversible error by according great weight to the opinions of Drs. Bancoff and Kuslis.

### Dr. D'Mello

Plaintiff contends it was error for the ALJ to assign no weight to Dr. Suresh D'Mello's opinions.[59] But Plaintiff misstates the ALJ's analysis by zeroing in on her reference to the "checklist style format" in which Dr. D'Mello's opinions appeared.[60] As an initial matter, Dr.

---

[57] Doc. #19-1 at 28.
[58] Doc. #14-1 at 1705 (Tr. 1696), 1707–08 (Tr. 1698–99)
[59] To the extent that Plaintiff contends that the ALJ's analysis of Dr. D'Mello's opinions inappropriately prioritized supportability and consistency, that argument remains unavailing for the aforementioned reasons. *See* Doc. #19-1 at 29.
[60] *Id.* at 30.

D'Mello's barebones forms from 2015 and 2016 were not compelling evidence.[61] *Woodworth v. Berryhill*, 2018 WL 1989973, at \*4 (W.D.N.Y. 2018) ("It was . . . appropriate for the ALJ to afford less weight to Dr. Andolina's opinion because it was merely a form checklist without additional elaboration."); *see Poole*, 462 F. Supp. 3d at 151 ("The better that a medical opinion is explained and supported by relevant evidence, the more weight it should be given."). And Dr. D'Mello's comments suggest that the evaluations were largely based on Plaintiff's report of her symptoms.[62] *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (upholding the ALJ's decision to not credit medical opinion that "was based largely upon [claimant's] subjective responses"); *Randall v. Berryhill*, 2018 WL 4204438, at \*5 (D. Conn. 2018) (same). Moreover, the ALJ found that Plaintiff's claims were "unsupported by the clinical findings, which show largely normal physical examinations and intact mental status exams."[63]

Take an October 2014 visit during which Dr. D'Mello noted that Plaintiff was "doing better. She is brighter. She is happier" and her "headaches have improved and so have her somatic symptoms of depression."[64] A year later, Dr. D'Mello recorded that "[o]ver the past 2 weeks, [Plaintiff] has not felt down, depressed or hopeless," "has not felt a lack of interest of pleasure in doing things," and would "make an attempt to start an exercise program."[65] Indeed, Plaintiff reported to a different provider during a February 2016 visit that she was "satisfied with current depression management."[66]

---

[61] *Compare See* Doc. #14-1 at 1524–31 (Tr. 1515–22) (October 16, 2015 disability paperwork), *and id.* at 1533–38 (Tr. 1524–29) (April 14, 2016 medical source statement), *with id.* at 1478–507 (Tr. 1469–98) (July 2015 to April 2016 treatment notes).
[62] *Id.* at 1533 (Tr. 1524) (noting "patient's description of inability"), 1535 (Tr. 1526) (attributing "tired muscles" to fibromyalgia based on "patient's estimation").
[63] *Id.* at 1706 (Tr. 1697).
[64] *Id.* at 1265 (Tr. 1256).
[65] *Id.* at 1495 (Tr. 1486), 1498 (Tr. 1489).
[66] *Id.* at 1489 (Tr. 1480).

The ALJ also found Dr. D'Mello's opinions to be inconsistent with his continued recommendations for Plaintiff to engage in "regular physical activity" and "regular aerobic activity" during the period in question.[67] While it is true that the ruling touched on Plaintiff's "ability to enroll in college courses," the ALJ found that to be yet another inconsistency with Dr. D'Mello's opinion of Plaintiff's limitations.[68] In short, I find that the ALJ did not err in according no weight to Dr. D'Mello's opinions.

Plaintiff further claims that the ALJ "gave no consideration to [Dr. D'Mello's] field of practice" or his "extensive and thorough treatment relationship with the plaintiff."[69] But these contentions are contradicted by the ruling. Indeed, the ALJ noted that Plaintiff "continued to seek routine and conservative treatment with primary care provider, Suresh D'Mello, M.D."[70] Moreover, the ALJ explicitly referenced Dr. D'Mello's treatment notes spanning from 2014 to 2016.[71] Therefore, I cannot find that the ALJ failed to consider Dr. D'Mello's specialty or his treatment relationship with Plaintiff.

Plaintiff further contends that the ALJ "applied wildly disparate reasoning" in evaluating Dr. D'Mello's opinions "to achieve her desired outcome."[72] Plaintiff points to the "partial weight" the ALJ accorded to the report of consultative examiner, Dr. Herbert Reiher, which was "based upon his one-time examining relationship" and without review of medical records, and argues that if the same reasoning was applied to Dr. D'Mello, "one would have to come up with a new term because 'great weight' would not begin to describe the amount of evidentiary weight

---

[67] *See, e.g.*, *id.* at 1485 (Tr. 1476), 1498 (Tr. 1489), 1507 (Tr. 1498).
[68] *Id.* at 1706 (Tr. 1697); *compare id.* at 1533–38 (Tr. 1524–29) (Dr. D'Mello's finding that Plaintiff is limited to less than sedentary work), *with* Doc. #14-2 at 166–71 (Tr. 2157–62) (Plaintiff's college transcript).
[69] Doc. #19-1 at 29.
[70] Doc. #14-1 at 1701 (Tr. 1692).
[71] *Ibid.*
[72] Doc. #19-1 at 30.

to be afforded."[73] But Plaintiff ignores that a consultative examiner is not required to review medical records. 20 C.F.R. § 404.1519n(c) (listing the elements of a complete consultative exam, which do not include review of medical records); *see Stottlar v. Colvin*, 2017 WL 972108, at *7 (N.D.N.Y. 2017) ("[A] medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinion 'or the ALJ's finding relying thereon.'"). While "opinions from one-time examining sources that conflict with treating source opinions are generally given less weight," *Martinez v. Comm'r of Soc. Sec.*, 2023 WL 2707319, at *11 (S.D.N.Y. 2023), "in some cases, the opinion of a consultative examiner who did not review the claimant's medical records may provide 'good reasons' for an ALJ to discount the opinion of a treating physician," *Benitez v. Comm'r of Soc. Sec.*, 2021 WL 4239244, at *16 (S.D.N.Y. 2021) (collecting cases). And as discussed above, the ALJ explained why she assigned no weight to Dr. D'Mello's opinions.[74] Accordingly, I do not find that the ALJ applied disparate reasoning in her evaluation of medical expert opinions.

### *Chronic fatigue syndrome*

Plaintiff also claims that the ALJ failed to evaluate her chronic fatigue syndrome ("CFS") as a medically determinable impairment.[75] But Plaintiff did not list CFS among her medical conditions in her application for supplemental security income or in her written exceptions to the ALJ's unfavorable decision.[76] *See Robin R. v. Comm'r of Soc. Sec.*, 2021 WL 3710540, at *3 (W.D.N.Y. 2021) (finding "no basis" for the ALJ to consider a back impairment because plaintiff did not include the impairment in her application for disability or report to the Appeals

---

[73] *Id.* at 29–30.
[74] Doc. #14-1 at 1706 (Tr. 1697)
[75] Doc. #19-1 at 31–34.
[76] Doc. #14-1 at 294 (Tr. 285); Doc. #14-2 at 20–21 (Tr. 2011–12).

Council).[77] Nor does it matter that Plaintiff testified about her chronic fatigue symptoms at the March 2022 hearing. *See Castillo v. Comm'r, Soc. Sec. Admin.*, 2019 WL 642765, at *3 n.5 (S.D.N.Y. 2019) ("Though mentioned by Plaintiff during the hearing, the ALJ was not required to consider Plaintiff's alleged right leg, back, and shoulder pain in reaching his RFC determination because Plaintiff did not list these impairments in his initial SSI application."); *Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *12 n.8 (S.D.N.Y. 2018) (same). Accordingly, there was no basis for the ALJ to discuss CFS in her ruling.

But even if the ALJ erred by not evaluating whether Plaintiff's CFS qualified as a medically determinable impairment, that error was harmless. Plaintiff testified that her chronic fatigue manifested in "very low energy" and that symptoms had persisted since she had "gotten [her] diagnosis for fibromyalgia," as "the two kind of went together."[78] In her ruling, the ALJ discussed symptoms that could be attributable to CFS, such as muscle pain, fatigue, pharyngitis, sinusitis, and weight gain.[79] *See* Social Security Ruling, SSR 14-1p, 2014 WL 1371245, at *3–4 (2014) (outlining "medical signs" to help establish the existence of a medically determinable impairment of CFS). Accordingly, any error that resulted from the ALJ's failure to determine whether Plaintiff's CFS was a medically determinable impairment was harmless because the ALJ considered symptoms that could have stemmed from CFS. *See Robin R.*, 2021 WL 3710540, at *3 (concluding that "any error in failing to identify a severe back impairment was harmless because the ALJ considered Plaintiff's complaints and treatment regarding a back impairment at subsequent steps of the evaluation"); *Lorusso v. Saul*, 2020 WL 813595, at *11 n.14 (D. Conn.

---

[77] This is factually distinct from a plaintiff's mere failure to include the impairment in a request for review of an ALJ's unfavorable decision to the Appeals Council. The Supreme Court has been clear that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000).
[78] Doc. #14-1 at 1740 (Tr. 1731).
[79] *See id.* at 1694 (Tr. 1685), 1697 (Tr. 1688), 1700 (Tr. 1691), 1702 (Tr. 1693), 1704 (Tr. 1695).

2020) (denying remand because "the Court's discussion of the plaintiff's cervical spine impairment . . . encompasses the plaintiff's 'back pain'").

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc. #19) and GRANTS the Commissioner's motion to affirm (Doc. #20).

It is so ordered.

Dated at New Haven this 23rd day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge